UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 19-23563-CIV-MORENO**

JON A. SALE, as Receiver for Digi South,
LLC,

                     Plaintiff,

vs.

FERRARI FINANCIAL SERVICES, INC.,

                     Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S AMENDED MOTION TO DISMISS COMPLAINT

THIS CAUSE came before the Court upon Defendant Ferrari Financial Services, Inc.'s Amended Motion to Dismiss Complaint (**D.E. 15**). The Plaintiff Receiver Jon A. Sale filed a Memorandum of Law in Opposition (**D.E. 16**) and the Defendant filed a reply (**D.E. 20**). Accordingly, the motion is ripe for the Court's consideration. For the reasons stated herein, the Court grants in part and denies in part the Defendant's Amended Motion to Dismiss.

## I.     BACKGROUND

This receivership claw back action stems from the U.S. Securities and Exchange Commission's enforcement action against 1 Global Capital LLC and its former chairman and chief executive officer, Carl Ruderman, for the misappropriation of at least $35 million of its investors' funds, with at least $28 million paid directly to Ruderman, his family, trust, and entities controlled by him, including the entity in this case, Digi South. *See Securities and Exchange Commission v. 1 Global Capital LLC*, Case No. 18-cv-61991-BB (the "Commission Proceeding"). (D.E. 1 ¶¶ 1, 5). After Ruderman consented to an entry of a judgment against him in those proceedings (*id.* ¶

10), the district court appointed Jon A. Sale as the Receiver to the entity in this case, Digi South. *Id.* ¶ 14.[1] Pursuant to that district court's order, the Receiver brings this action against the Defendant, Ferrari Financial Services, Inc., seeking to void and recover transfers that were made by Ruderman, while controlling Digi South, to the Defendant for the lease of a Ferrari.

In the Complaint to Avoid and Recover Fraudulent Transfers, filed on August 23, 2019, the Receiver alleges that Ruderman directed 1 Global to transfer more than $805,000 of investor funds to Digi South. (D.E. 1 ¶ 28). As Ruderman "controlled Digi South and made decisions regarding Digi South's funding and use of funds," he "commingled and fraudulently used investor funds transferred to Digi South to pay his own personal expenses, including luxury car payments, without disclosing such uses of those funds to the investors and creditors of 1 Global." *Id.* As relevant here, the Receiver seeks to avoid and recover the fraudulent transfers made by Ruderman, while controlling Digi South, to the Defendant. The transfers occurred between September 19, 2014 and September 19, 2016, totaled $65,467.92, and were for the lease of a luxury car, to wit, a Ferrari. (D.E. 1 ¶¶ 34-35).

The Receiver further alleges that Digi South "never had a contractual relationship" with the Defendant," rather, the Defendant "had a relationship with [] Ruderman, who applied and was approved for the lease and used the Ferrari for his own personal use." *Id.* ¶ 34. As a result, "[t]he [t]ransfers were not made in connection with any legitimate business of Digi South or any of its investors or creditors" and Digi South "received no benefit from [the Defendant]." *Id.* ¶ 35.

The Defendant now moves to dismiss the Receiver's Complaint, arguing that: (1) the Receiver lacks standing as to his Florida Uniform Fraudulent Transfer Act ("FUFTA") claims; (2)

---

[1] The Receiver attached a copy of the district court's Sealed Order Granting Plaintiff Securities and Exchange Commission's Emergency *Ex Parte* Motion for Appointment of Receiver to the Complaint as Exhibit A (D.E. 1-1).

the Receiver has failed to state a claim upon which relief can be granted as to his claims under FUFTA's actual and constructive fraud provisions (Counts I-III) and for unjust enrichment (Count IV). The Defendant also seeks to dismiss certain alleged transfers under FUFTA's constructive fraud claims (Counts II-III) and the unjust enrichment claim (Count IV) as barred by the 4-year statute of limitations under Florida law.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege misconduct, but must demonstrate that the pleader is entitled to relief.  *See Iqbal,* 129 S. Ct. at 1950.

## III.   ANALYSIS

As a threshold matter, this Court shall first address the Defendant's argument that the Receiver has failed to adequately plead a creditor-debtor relationship, as required under FUFTA, and therefore lacks standing to bring FUFTA claims (Counts I-III), on behalf of Digi South, against

the Defendant. Second, the Court will discuss whether the Receiver has adequately pled the actual fraud claim under FUFTA (Count I). Third, the Court will examine whether the Receiver has adequately pled the constructive fraud claims under FUFTA (Counts II-III). Fourth, the Court will review whether the express contract and Florida's voluntary payment doctrine mandate dismissal of the Receiver's unjust enrichment claim (Count IV). Lastly, the Court will determine whether Florida's 4-year statute of limitations bars the Receiver from voiding and recovering certain transfers alleged under his FUFTA constructive fraud claims and unjust enrichment claim.

### A. The Receiver has standing to bring claims under FUFTA's actual and constructive fraud provisions.

"It is axiomatic that a receiver obtains only the rights of action and remedies that were possessed by the person or corporation in receivership." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306 (11th Cir. 2020) (citing *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d DCA 2003)). In *Isaiah*, the Eleventh Circuit noted that "[a]lthough a receivership is typically created to protect the rights of creditors, the receiver is not the class representative of the creditors and cannot pursue claims owned directly by the creditors." *Id.* "Rather, [the receiver] is limited to bringing only those actions previously owned by the party in receivership." *Id.* These include "actions that the corporation, which has been 'cleansed' through receivership, may bring directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership." *Id.* (citing *Freeman*, 865 So. 2d at 551).

For example, "where a corporation is operated by a Ponzi scheme, it is still in the eyes of the law a separate entity with rights and duties." *Id.* (citing *Wiand v. Lee*, 753 F.3d 1194, 1202 (11th Cir. 2014)). "The money it receives from investors should be used for the corporation's stated purpose, and so when assets are transferred for an unauthorized purpose to the detriment of

the defrauded investors, who are tort creditors of the corporation, the corporation itself is harmed."
*Id.* (citing *Lee*, 753 F.3d at 1202). Despite a corporation's participation in "fraudulent transfers
prior to receivership, once the individual tortfeasor is removed and a receiver is appointed, the
corporation becomes entitled to the return of its assets that had been diverted for unauthorized
purposes, e.g., to perpetrate a Ponzi scheme." *Isaiah*, 960 F.3d at 1306 (citing *Lee*, 753 F.3d at
1202). Accordingly, "[f]or that reason, [] the receiver for the corporation has standing to sue the
recipients of fraudulent transfers under the [Florida Uniform Fraudulent Transfer Act]." *Id.* (citing
*Lee*, 753 F.3d at 1203).

In the Complaint, the Receiver alleges FUFTA violations under its actual fraud provision,
§ 726.105(1)(a),[2] and constructive fraud provisions, §§ 726.105(1)(b) and 726.106(1).[3]

Section 726.105 provides as follows:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the
obligation was incurred, if the debtor made the transfer or incurred the
obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or
obligation, and the debtor:

1. Was engaged or was about to engage in a business or a transaction for which
the remaining assets of the debtor were unreasonably small in relation to the
business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that he or
she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1).

Section 726.106(1) reads as follows:

---

[2] (D.E. 1, at 12-13, Count I).

[3] (*Id.* at 13-14, Count II; 14-15, Count III).

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Fla. Stat. § 726.106(1).

Hence, it is well-settled that FUFTA's actual and constructive fraud provisions require a creditor-debtor relationship. *See Newman v. Williams L. Gunlicks Irrevocable* Trust, 897 F. Supp. 2d 1270, 1276 (M.D. Fla. 2012). In its amended motion to dismiss,[4] the Defendant argues that "the Receiver has failed to and cannot establish the requisite debtor-creditor relationship" because the Receiver "stands in the shoes of the transferor—Digi South" and "does not purport to stand in the shoes of any creditor." (D.E. 15 at 4-5). The Court disagrees.

In *Wiand v. Lee*, the Eleventh Circuit, provided "an explanation of how [a] [r]eceiver has standing to sue" where "receivership entities are creditors of [a Ponzi scheme operator] for the transfers he made in perpetrating the Ponzi scheme." 753 F.3d at 1202. In that case, the receiver "proceed[ed] under the theory that the receivership entities [were] creditors of [the Ponzi scheme operator] and that [the Ponzi scheme operator] [was] a debtor to the entities." *Id.* Relying on the "leading case on the issue," *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995), the *Lee* court noted that the receiver had "standing to sue on behalf of the receivership entities because they were harmed by [the Ponzi scheme operator] when he transferred profits to investors, such as the [] [d]efendants, from the principal investments of others for the unauthorized purpose of continuing the Ponzi scheme." *Id.* When "[a]pplying *Lehmann* to FUFTA, the receivership entities became

---

[4] The Defendant filed an amended motion to dismiss solely to add footnote 2. (D.E. 15, at 1 n.1).

'creditors' of [the Ponzi scheme operator] at the time he made [the unauthorized transfers] because, as FUFTA requires, they had a 'claim' against [the Ponzi scheme operator]." *Id.* at 1202-03.

*Wiand v. Lee* controls here. In the Complaint, the Receiver alleges that Ruderman, the Ponzi scheme operator, used Digi South "to commingle and siphon invested funds without the knowledge or permission of investors" and used Digi South "to pay his personal expenses," namely, "Ruderman's personal luxury car payments for which Digi South received no benefit." (D.E. 1 at 1-2). Like in *Lee*, where the receiver had standing to sue because the receivership entities were harmed by the Ponzi scheme operator when investor funds were used for an unauthorized purpose, here, the Receiver has standing to sue because Digi South was harmed by Ruderman when he fraudulently diverted investor funds to the Defendant "for the lease of a luxury car." *Id.* ¶¶ 32, 33. Thus, applying *Lee* to these FUFTA claims, Digi South "became [a] 'creditor[]' of [Ruderman] at the time he [fraudulently diverted investor funds for his personal use] because, as FUFTA requires, [it] had a 'claim' against [Ruderman]." 753 F.3d at 1202-03.

The Defendant cites to this Court's decision in *Martinez v. Steinger*, No. 05-61471, 2006 WL 8432187 (S.D. Fla. July 5, 2006), which notably predates the Eleventh Circuit's decision in *Lee* (2014), and more recently, *Isaiah* (2020). In *Martinez*, the receiver, who brought suit on behalf of the receivership entities, filed suit against the former principals of said entities, alleging that the defendants "unjustly enriched themselves by extracting tens of millions of dollars in 'consulting fees' from [the entities]" and using millions from the entities for "their personal benefit." 2006 WL 8432187, at *1. The receiver further alleged that the "[consulting] fees came directly from investors' funds and that the [] [d]efendants failed to provide any value in return" and that another defendant, Steven Steiner, caused one of the receivership entities, Mutual Benefits Corporation ("MBC") "to make indirect payments for his benefit, including, for example, payment of personal

expenses on his credit card." *Id.* The receiver alleged claims of fraudulent transfers under Florida law against the defendants, who moved to dismiss the amended complaint, arguing that the receiver lacked standing. *Id.* at *1-2. As to the FUFTA claims in that case, this Court found that the receiver's amended complaint "d[id] not allege that MBC [one of the two receivership entities] was a creditor," but rather alleged that "the payments at issue were made 'from [the two receivership entities] with the actual intent to hinder, delay and defraud the creditors of [the two receivership entities]' rather than to hinder, delay and defraud MBC." *Id.* at *5.

Like in *Martinez*, the Receiver does not explicitly allege that Digi South is a creditor and alleges that Digi South made the payments (or transfers) to "delay, hinder, or defraud" 1 Global creditors and investors (D.E. 1 ¶ 45). Nonetheless, reviewing the Complaint's allegations in their entirety, the Receiver appears to "proceed under the theory that the receivership entities [were] creditors of [the Ponzi scheme operator] and that [the Ponzi scheme operator] [was] a debtor to the entities." *Lee*, 753 F.3d at 1202. Specifically, the Receiver alleges that Ruderman controlled Digi South at the time he fraudulently diverted funds from the receivership entity to himself for payments of the lease of a luxury car and that Digi South did not receive "any benefit for itself." (D.E. 1 ¶¶ 30, 32-33, 35-37). The Receiver also alleges that "[a]t all materials times hereto, [] Ruderman…controlled and operated [] the Receivership entities, thereby causing the Transfers complained of herein." *Id.* ¶ 37. Accordingly, as explained in *Wiand v. Lee*, the Receiver has standing to bring FUFTA claims, on behalf Digi South, against the Defendant in this case.

However, while the Receiver has standing to bring these types of FUFTA claims against the Defendant, the Court will grant the Defendant's amended motion to dismiss these FUFTA claims, without prejudice, with leave for the Receiver to file an amended complaint that adequately alleges a creditor-debtor relationship. *See Pearlman v. Alexis*, No. 09-20865, 2009 WL 3161830,

at *5 (S.D. Fla. Sept. 25, 2009) (dismissing FUFTA claim without prejudice, with leave to refile an amended complaint that included "factual allegations concerning the creditor-debtor relationship"); *Martinez*, 2006 WL 8432187, at *5. Accordingly, in any amended complaint, the Receiver shall adequately plead a creditor-debtor relationship as necessary under FUFTA, with Digi South as the creditor and Ruderman as the debtor. *See Lee*, 753 F.3d 1194.

**B. The Court finds that the Ponzi scheme presumption does not apply in this case, but, nevertheless, the Receiver has adequately pled that Ruderman, while controlling Digi South, made transfers "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor."**

Next, the Defendant seeks to dismiss the Receiver's § 726.105(1)(a) claim (Count I), arguing that the Ponzi scheme presumption does not apply and that this claim's "conclusory allegations are insufficient" (D.E. 15 at 6-10). FUFTA's actual fraud provision provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a). "The statute requires '[1] a creditor to be defrauded, [2] a debtor intending fraud, [3] and a conveyance of property which is applicable by law to the payment of the debt due." *Lee*, 753 F.3d at 1200 (citing *Johnson v. Dowell*, 592 So. 2d 1194, 1196 (Fla. 2d DCA 1992)). The second element can be established by the Ponzi scheme presumption.

**1. The Ponzi scheme presumption is inapplicable to the transfers at issue because such transfers were not made in furtherance of the scheme but made for the lease payments of a Ferrari.**

"Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *United States v. Silvestri*, 409 F.3d 1311, 1317 n. 6 (11th Cir. 2005) (citing *In re Bonham*, 229 F.3d 750, 759 n. 1 (9th Cir. 2000)). In *Wiand v. Lee*, the Eleventh Circuit held that

the receiver established that the debtor intended fraud by the presumption "since [the debtor] indisputably made the transfers to [the defendant investor] in furtherance of the Ponzi scheme." *Lee*, 753 F.3d at 1203 n. 5. To be sure, acts that are taken in furtherance of a Ponzi scheme include "[e]very payment made by the debtor to keep the scheme on-going" and is "made with actual intent to hinder, delay, or defraud creditors, primarily new investors." *In re ATM Fin. Servs., LLC*, No. 6:08-bk-869-KSJ, 2011 WL 2580763, at *4 (Bankr. M.D. Fla. June 24, 2011); *see also In re Phoenix Diversified Inv. Corp.*, No. 08-15917-EPK, 2011 WL 2182881, at *3-4 (Bankr. S.D. Fla. June 2, 2011) (finding that Ponzi scheme presumption did not apply where "the debtor transferred money to the defendant in exchange for groceries and other personal items" because the purchase of items was not in furtherance of the alleged Ponzi scheme).

While the Receiver has alleged that Ruderman operated and oversaw a Ponzi scheme, *see generally* Complaint (D.E. 1), the Receiver has failed to show that the transfers at issue, $65,467.92 to the Defendant for the lease of a luxury car, were made "in furtherance of the Ponzi scheme." *Lee*, 753 F.3d at 1203 n. 5. These payments to the Defendant did not "keep the scheme on-going." *In re ATM Fin. Servs., LLC*, 2011 WL 2580763, at *4. Rather, as in *In re Phoenix*, these payments were made for the debtor's personal expenses and were not made to "perpetuate the scheme" or "necessary [for] the continuance of the fraudulent scheme." 2011 WL 2182881, at *3-4. Accordingly, the Court finds that the Ponzi scheme presumption is inapplicable to the transfers made in this case.

As the Ponzi scheme is not applicable to the transfers in this case, the Court will address the Defendant's argument that the Receiver's FUFTA claim under its actual fraud provision is inadequately pled. (D.E. 15 at 8-10).

**2. At this stage in the proceeding, the Receiver has alleged sufficient facts under FUFTA's actual fraud provision to show that the debtor, Ruderman, while controlling Digi South, made transfers with the intent to hinder, delay, or defraud.**

The Defendant argues that the Receiver has failed to allege facts that show the transfers were made with the intent to defraud a creditor. Defendant cites to *In re Rollaguard Security, LLC* for the proposition that "[i]n prosecuting a fraudulent transfer claim based on actual intent, it is typically not sufficient to show that the debtor intended to defraud someone and the debtor also made a transfer." 570 B.R. 859, 878 (Bankr. S.D. Fla. 2017) ("Just because a debtor is involved in a fraudulent scheme does not mean that every transfer made by that debtor is made with fraudulent intent."). Thus, "[i]n order to prosecute a claim based on actual intent to hinder, delay, or defraud a creditor, the plaintiff must show that the alleged fraudulent intent is related to the transfers sought to be avoided." *Id.* at 878-79 (internal citations omitted).

More specifically, the Defendant maintains that the Receiver "does not allege any of the badges of fraud [as provided in § 726.105(2)] with respect to any alleged transfer." (D.E. 15 at 9). Under § 726.105(2), when determining the debtor's actual intent under the actual fraud provision, courts may consider certain badges of fraud, such as whether: "[t]he transfer or obligation was to an insider," "[t]he debtor retained possession or control of the property transferred after the transfer," and "[t]he transfer or obligation was disclosed or concealed." Fla. Stat. § 726.105(2)(a)-(c). Notably, the statute indicates that these "badges of fraud" are nonexclusive, as it provides that consideration may be given to them, "among other factors." § 726.105(2); *see also Lee*, 753 F.3d at 1200 ("Although FUFTA lists a number of badges of fraud, '[i]t is clear from the language of the statute that in determining intent, consideration may be given to factors other than those listed.'") (citing *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498 (11th Cir. 1997) (citation and internal quotation omitted)); *see also In re Rollaguard Security, LLC*, 570

B.R. at 878 (stating that the badges of fraud "are intended to be guideposts—as opposed to ineluctable factors—in the Court's analysis of the totality of the circumstances to determine whether a transfer was made with actual fraudulent intent."). Hence, "[c]ourts may take into account the circumstances surrounding the conveyance." *Lee*, 753 F.3d at 1200 (internal citations omitted).

Nevertheless, while the Receiver does not argue in his response that the Complaint alleges "badges of fraud" (D.E. 16 at 9-13) and the Complaint does not explicitly reference § 726.105(2), it appears that at least one badge of fraud is present, namely, that the transfers were "concealed." § 726.105(2)(c). In relevant part, the Receiver alleges that Ruderman controlled Digi South and "used the entity to receive investor funds derived from the 1 Global Ponzi scheme without the knowledge of investors and to use those funds to pay for his own personal expenses." (D.E. 1 ¶ 30).

The Defendant cites *Cottage Int'l, Dev. Grp., LLC v. Buena Vista Corp.*, No. 13-61041, 2014 WL 12584337, at *6 (S.D. Fla. June 10, 2014) for the proposition that a plaintiff must allege facts showing that the defendant "made each relevant transfer with an intent to hinder, delay, or defraud [p]laintiff." (D.E. 15 at 10). Notably, the district court in *Cottage* found that the plaintiff's "allegations of concealment establish the requisite intent on the part of the debtor," where the debtor "released to [the recipient defendant] a portion of Escrow Funds" and the debtor "concealed from [p]laintiff that the transfer to [the recipient defendant] had been made." 2014 WL 12584337, at *8.

Accordingly, after careful consideration of the allegations in the Complaint, and, at this stage in the proceedings, this Court finds that the Receiver has alleged sufficient facts to show that the Ruderman, while controlling Digi South, made transfers "[w]ith actual intent to hinder, delay,

or defraud any creditor of the debtor." Nevertheless, in any amended complaint, the Receiver shall allege the appropriate creditor-debtor relationship, as provided in *Wiand v. Lee*, and cure the other deficiencies noted in this order.

**C.  The Receiver's constructive fraud claims (Counts II and III) under §§ 726.105(1)(b) and 726.106(1) should be dismissed without prejudice, with leave to refile an amended complaint that cures the deficiencies outlined herein.**

Third, the Defendant claims that the Receiver has failed to allege sufficient factual allegations as it relates the constructive fraud claims under FUFTA, §§ 726.105(1)(b), 726.106(1). Specifically, the Defendant maintains that the constructive fraud claims are insufficient because "[t]here are no factual allegations supporting the conclusory allegation that Digi South received less than reasonably equivalent value for each transfer." (D.E. 15 at 11-12). The Court agrees with the Defendant that the constructive fraud claims should be dismissed, but not for the reason provided by the Defendant. Rather, the Receiver's constructive fraud claims should be dismissed because they fail to include any allegation that the debtor, Ruderman, made the transfer "[w]ithout receiving reasonably equivalent value in exchange for the transfer or obligation," as required under §§ 726.105(1)(b), 726.106(1).

Section 726.105(1)(b) provides as follows:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

. . .

(b)  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1.  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

     2.   Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(b). A review of Count II of the Complaint, which alleges a constructive fraud claim under § 726.105(1)(b), does not include any allegation that the debtor, Ruderman, made the transfers to the Defendant "[w]ithout receiving a reasonably equivalent value in exchange for the transfer." (D.E. ¶¶ 50-56). Rather, Count II includes an allegation that Digi South, the creditor, made the transfers without receiving reasonably equivalent value in exchange for the [t]ransfers." (D.E. 1 ¶ 51).

     Accordingly, as this Court has already dismissed Count II without prejudice for the Receiver's failure to adequately plead a creditor-debtor relationship, *supra* III. A., any amended complaint shall also allege how the debtor, Ruderman, did not receive "a reasonably equivalent value in exchange for the transfer[s]," as well as supporting factual allegations. *See In re Arrow Air, Inc.*, No. 12-1710-BKC-AJC-A, 2012 WL 6561313, at *5 (Bankr. S.D. Fla. Dec. 14, 2012) (dismissing similar constructive fraud claims under 11 U.S.C. § 548(a)(1)(B) without prejudice, with leave to refile an amended complaint, because the trustee failed to "state facts to plausibly 'show that the debtor received less than was given.'") (citing *In re Phoenix Diversified Inv. Corp.*, 2011 WL 2182881, at *5).[5]

     As to Count III of the Complaint, the Receiver alleges a constructive fraud claim under § 726.106(1). Section 726.106(1) provides as follows:

     (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim rose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the

---

[5] When filing any amended complaint, if appropriate, the Receiver should also take care to adequately plead facts pertaining to § 726.105(1)(b)(1)-(2). Failure to include the necessary factual allegations and cure the deficiencies herein shall result in the dismissal of claims with prejudice, as appropriate.

> debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Fla. Stat. § 726.106(1). Similarly, Count III fails to include any factual allegations that the debtor, Ruderman, made the transfers to the Defendant "[w]ithout receiving a reasonably equivalent value in exchange for the transfer." (D.E. 1 ¶¶ 58-65). Additionally, Count III also omits any factual allegations concerning whether the debtor "was insolvent at that time" or "became insolvent as a result of the transfer or obligation." *See id.* As Count III of the Complaint has already been dismissed for the reasons previously stated, *supra* III. A., any amended complaint shall also cure these deficiencies. *See In re Arrow Air, Inc.*, 2012 WL 6561313, at *5; *see also Wiand v. Dancing $, LLC*, No. 8:10-CV-92-T-17MAP, 2011 WL 6718738, at *3 (M.D. Fla. Nov. 21, 2011) (noting, in relevant part, that "[a] transfer is fraudulent under a theory of constructive fraud if the transferor does not receive reasonable value in exchange").

**D. The Defendant's amended motion to dismiss the Receiver's unjust enrichment claim (Count IV) for failure to state a claim is denied because the Defendant did not provide a copy of the express contract and Florida's voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss.**

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)).

The Defendant first argues that the Receiver's unjust enrichment claim is barred because the payments (transfers) were made pursuant to an express contract. *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam) (holding that an "unjust enrichment claim was precluded by the existence of an express contract between the parties

concerning the same subject matter"). More specifically, the Defendant claims that "[a]ll of the payments at issue in this case were made pursuant to an express contract, the existence of which is undisputed by the Receiver." (D.E. 15 at 13).[6] Yet, one of the Defendant's own cases and its stated proposition support the denial of its motion to dismiss the unjust enrichment claim on this basis. In its amended motion to dismiss, the Defendant cites *State Farm Mut. Auto Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.* for the proposition that "[i]t is only upon a showing that an express contract exists [between the parties] that the unjust enrichment...count fails." No. 6:11-cv-1373-Orl-31GJK, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (internal citation omitted). The Defendant did not attach the express contract to its amended motion to dismiss, and, to date, has not filed the contract on the record. As such, the Court is left with the allegations in the Receiver's Complaint, which it accepts as true at this stage in the proceedings. The Complaint alleges, in relevant part, "[u]pon information and belief, Digi South never had a contractual relationship with [the Defendant], but, instead, [the Defendant] had a relationship with [] Ruderman, who applied and was approved for the lease and used the Ferrari for his own personal use." (D.E. 1 ¶ 35). Accordingly, based on the record to date in this matter, the Defendant's amended motion to dismiss the unjust enrichment claim on this basis is denied.

Second, the Defendant contends that the Receiver's unjust enrichment claim should be dismissed under "Florida's voluntary payment doctrine" and cites one case in support of this proposition: *Kissner v. McDonald's Corp.*, No. 18-CV-61026, 2018 WL 5832979 (S.D. Fla. Nov. 2, 2018). In *Kissner*, the plaintiffs filed suit against McDonald's after it allegedly "ceased listing" their Quarter Pounder hamburger and only listed a Quarter Pounder with cheese, which resulted in customers "being overcharged...[and] forced to pay for two slices of cheese, which they do not

---

[6] Of note, the Receiver does not respond to this argument in his response to the amended motion to dismiss (D.E. 16 at 15-18).

want, do not order or receive, to be able to purchase their desired product [a Quarter Pounder hamburger]." *Id.* at *1. Regarding the unjust enrichment claim, the plaintiffs alleged that the defendants are "being unjustly enriched by these practices because they receive payment to which they are not entitled for cheese that is not delivered to their customers." *Id.* After dismissing the claim on other grounds, the district court noted that such a claim "would also be barred in this case by Florida's voluntary payment doctrine." *Id.* at *4. "The voluntary pay doctrine provides that 'where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered." *Id.* (internal citations omitted). Moreover, the district court added that "[t]he theory behind the doctrine is that if a party would resist an unjust demand of payment, he must do so at the threshold." *Id.*

In his response, the Receiver argues that "given the nature of the doctrine, the Court cannot decide this issue at the motion to dismiss stage" (D.E. 16 at 18). Notably, the Receiver does not address *Kissner. See id. generally.* Moreover, the cases cited by the Receiver are not particularly instructive because most of them do not address the applicability of Florida's voluntary payment doctrine or involve an unjust enrichment claim where the defendant conferred a benefit to a third party. *See Zayed v. Buysse*, No. 11-CV-1042, 2011 WL 2160276 (D. Minn. June 1, 2011) (order adopting report and recommendation and denying motion to dismiss where the receiver had standing to bring, and sufficiently alleged, an unjust enrichment claim against the defendant, who was able to retrieve her investment in Ponzi scheme through her grandson that worked for Ponzi scheme participant); *Steinberg ex rel. Lancer Mgmt. Grp. LLC v. Alpha Fifth Grp.*, No. 04-60899-CIV, 2010 WL 1332840, at *3-4 (S.D. Fla. Mar. 30, 2010) (denying motion to dismiss FUFTA and unjust enrichment claims where the receiver brought claims to recover "wrongly dissipated funds"); *Wing v. Hammons*, No. 2:08-CV-00620, 2009 WL 1362389, at *1, 3 (D. Utah, May 14,

2009) (denying motion to dismiss where the defendant received transfer amounts from the receivership entity that exceeded the initial amount provided by the defendant); *Cross v. Point and Pay, LLC*, 274 F.Supp.3d 1289, 1292 (M.D. Fla. 2017) (stating that "the voluntary payment doctrine is an affirmative defense that normally should not be considered on a motion to dismiss") (citing *Schojan v. Papa John's Int'l Inc.*, 34 F.Supp.3d 1206, 1211 (M.D. Fla. 2014)).

In its reply, the Defendant cites *Kuchenmeister v. HealthPort Technologies, LLC* for the proposition that the applicability of the voluntary payment doctrine can be decided at the motion to dismiss stage. 753 Fed. App'x 794 (11th Cir. 2018) (affirming order granting motion to dismiss based on Georgia and Minnesota's voluntary payment doctrine). Yet, a number of courts in this district have described the doctrine as an affirmative defense under Florida law. *See Cross*, F.Supp.3d at 1292-93 (applying Florida law); *Cox v. Porsche Fin. Servs.*, 342 F.Supp.3d 1271, 1290 (S.D. Fla. 2018) (applying Florida law); *Maor v. Dollar Thrifty Automotive Grp., Inc.*, 303 F.Supp.3d 1320, 1326 (S.D. Fla. 2017) (applying Florida law); *Deere Constr., LLC v. Cemex Constr. Materials Florida., LLC*, 198 F.Supp.3d 1332, 1342 (S.D. Fla. 2016) ("[T]he voluntary payment doctrine is an affirmative defense that may not be raised on a motion to dismiss, as it entails a fact-based inquiry not suited for resolution on a Rule 12(b)(6) motion.") (internal citations omitted).

As *Kuchenmeister* did not involve Florida's voluntary payment doctrine, this Court declines to dismiss the Receiver's unjust enrichment claim as barred by the doctrine because it is an affirmative defense under Florida law. *Cemex*, 198 F.Supp.3d at 1342 (finding that voluntary payment doctrine may not be raised on a motion to dismiss); *Maor*, 303 F.Supp.3d at 1326 (same). Accordingly, the Defendant's amended motion to dismiss the Receiver's unjust enrichment claim as barred by the voluntary payment doctrine is denied.

**E. The Defendant's amended motion to dismiss the alleged transfers occurring on September 19, 2014, through, and including, August 19, 2015, as they relate to the Receiver's constructive fraud and unjust enrichment claims (Counts II-IV) are dismissed as barred by the statute of limitations.**

Lastly, the Defendant argues that the alleged transfers beginning on September 14, 2014,[7] through, and including the transfer on, August 19, 2015, as alleged under the constructive fraud claims under FUFTA (Counts II-III) and the unjust enrichment claim (Count IV) are barred by Florida's 4-year statute of limitations. (D.E. 15 at 14) (citing Fla. Stat. §§ 726.110; 95.11(3)(k)).

"[A] statute of limitations defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted…when the complaint shows on its face that the limitations period has run." *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (internal citation omitted); *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.") (internal citation and quotations omitted).

As to the constructive fraud claims under FUFTA, § 726.110(2) provides that "[a] cause of action with respect to a fraudulent transfer or obligation under ss. 726.101-726.112 is extinguished unless action is brought… (2) [u]nder s. 726.105(1)(b) or s. 726.106(1), within 4 years after the transfer was made or the obligation was incurred." Fla. Stat. § 726.110(2). In his response, the Receiver contends that the transfers in question are not barred by the statute of limitations because of the "one-year savings clause provided in Section 726.110(1)." (D.E. 16 at 18). However, the Court notes that the "one-year savings clause" language is included under §

---

[7] The Court notes that, in the amended motion to dismiss, the Defendant states that the transfers made from September 14, 2014 through the transfer made on August 19, 2015, should be dismissed as barred by the relevant statute of limitations. (D.E. 15 at 14). However, according to the Receiver's Complaint, the first transfer occurred on September 19, 2014, not September 14. (D.E. ¶ 34).

726.110(1), which applies to causes of action brought under FUFTA's actual fraud provision. §

726.110(1) ("Under s. 726.105(1)(a), within 4 years after the transfer was made or the obligation

was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have

been discovered by the claimant[.]"). Similar language is absent from § 726.110(2), which governs

FUFTA's constructive fraud claims at issue here. As such, a plain reading of the statute shows that

the "savings clause" only applies to FUFTA claims under its actual fraud provision. § 726.110;

*See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 12, at

124 (2012) (discussing the "presumption of consistent usage" and how "[w]here the legislature

ha[d] specifically used a word or term in certain places within a statute and excluded it in another

place, the court should not read that term into the section from which it was excluded.") (citing

*Voss v. Ralston (In re Voss's Adoption)*, 550 P.2d 481, 485 (Wyo. 1976)). Thus, this Court will

not read a savings clause into § 726.110(2), where none exists. *See* Scalia & Garner, *Reading Law*

§ 8, at 93 ("Nothing is to be added to what the text states or reasonably implies…That is, a matter

not covered is to be treated as not covered.").

The district court in *Steinberg v. A Analyst Ltd.* reached the same result. No. 04-60898,

2009 WL 806780, at *10 (S.D. Fla. Mar. 26, 2009). There, the district court reasoned that "[a] well

settled principle of statutory construction provides that when the legislature has included a specific

provision in one part of the statute and omitted it in another part of the same statute, the Court

must assume the omission was intentional." *Id*. Thus, the district court found that the statute of

limitations for constructive fraud claims under FUFTA, §§ 726.105(1)(b), 726.106(1), was 4 years

and that the doctrine of equitable tolling could not be applied to such claims as the "savings clause"

was absent under § 726.110(2). *Id.* at *8-10. [8]

---

[8] The Receiver cites one case involving the applicability of the savings clause in the context of a
FUFTA claim.  In *Wiand v. Meeker*, the court held that the receiver "timely filed his claims within

Based on a plain reading of § 726.110, this Court finds that there is no "savings clause" for constructive fraud claims under FUFTA and the statute of limitations is within 4 years after the transfer was made. Accordingly, as the Receiver filed this action on August 23, 2019, the transfers alleged under the Receiver's constructive fraud claims (Counts II-III), namely, the transfers that occurred from September 19, 2014 to, and including, August 19, 2015, are barred by the statute of limitations.

For the unjust enrichment claim, § 93.11(3)(k) provides that "[a]ctions other than for recovery of real property shall be commenced…[w]ithin four years…(k) "[a] legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts." Fla. Stat. § 93.11(3)(k). Notably, the Receiver's response does not address whether the alleged transfers from September 19, 2014 to, and including, August 19, 2015, as they relate to the unjust enrichment claim (Count IV), are barred by § 93.11(3)(k). (D.E. 16 at 18-19).

Thus, because the Receiver failed to address the Defendant's argument as to whether the alleged transfers in Count IV are barred by § 93.11(3)(k), and more than 4 years have passed from the date of the transfers at issue and the Receiver filing the Complaint on August 23, 2019, the Court shall grant the Defendant's amended motion to dismiss on this basis. Accordingly, any alleged transfers from September 19, 2014, to August 19, 2015, as they relate to Count IV, are dismissed as barred by the statute of limitations.

## IV.     CONCLUSION

Accordingly, for the foregoing reasons, it is

---

the one-year savings clause period" pursuant to § 726.110(1). 572 F. App'x 689, 692 (11th Cir. 2014). However, the *Meeker* court did not specifically address whether the claims in question were under FUFTA's actual or constructive fraud provisions. *See id. generally.*

**ADJUDGED** that

1. The Defendant's amended motion to dismiss (**D.E. 15**) is **GRANTED IN PART AND DENIED IN PART as stated herein.**

2. The FUFTA claims (Counts I-III) are hereby **DISMISSED without prejudice**, with leave to file an amended complaint that cures the deficiencies as outlined herein. The Receiver shall file any amended complaint **by October 9, 2020**. Failure to cure these deficiencies or to file an amended complaint by the stated deadline shall result in the dismissal of the cause of action or the case, with prejudice.

3. The alleged transfers occurring between September 19, 2014 and August 15, 2019, as alleged in the FUFTA constructive fraud claims (Counts II-III) and unjust enrichment claim (Count IV), are hereby **DISMISSED with prejudice,** as barred by Florida's 4-year statute of limitations.

4. When filing any amended complaint, the causes of action shall correspond to their counts in the original complaint, e.g., FUFTA actual fraud claim (Count I), unjust enrichment claim (Count IV).

DONE AND ORDERED in Chambers at Miami, Florida, this 25th of September 2020.


_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record